IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VICKIE V.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:21-cv-00217 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Vickie V. ("Vickie") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f. Vickie alleges that the Administrative Law Judge ("ALJ") erred by: (1) improperly assessing her osteoarthritis and lumbar spine degenerative disc disease as non-severe impairments, and (2) improperly evaluating the opinions of Vickie's treating physician and consultative examiner.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 25).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

the Commissioner's conclusion that Vickie failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Vickie filed this claim for SSI on February 5, 2018, claiming her disability began on December 20, 1985, due to bipolar disorder and depression. R. 10, 85–86, 266, 270. The state agency denied Vickie's claim at the initial and reconsideration levels of administrative review. R. 85–94, 96–109. The relevant period for Vickie's SSI claim is from her February 5, 2018

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

application date through the ALJ's decision on May 5, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed). On January 16, 2020, ALJ Joseph Scruton held a hearing to consider Vickie's claim. R. 47–83. Counsel represented Vickie at the hearing, which included testimony from vocational expert Mark Hileman. On May 5, 2020, the ALJ entered his decision analyzing Vickie's claim under the familiar five-step process[3] and denying her claim for SSI benefits. R. 10–28.

The ALJ found that Vickie had not engaged in substantial gainful activity since February 5, 2018, the application date. R. 12. The ALJ determined that Vickie suffered from the severe mental impairments of bipolar disorder and generalized anxiety disorder. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14–17. The ALJ found that regarding her mental impairments, Vickie had a mild limitation in understanding, remembering or applying information and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and in adapting or managing oneself. Id.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ concluded that Vickie retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels with certain non-exertional limitations. Vickie is able to maintain attention, concentration, and focus for simple, routine tasks with scheduled breaks at approximately two-hour intervals. She can have no public interaction requirements. Vickie can occasionally interact with others, but in predominantly brief superficial encounters of one to three minutes for each encounter. She can have no high demand pace production work or assembly line work. Vickie, apart from regularly scheduled breaks, would incur up to ten percent off task performance due to her moderate restrictions in the categories of concentration, persistence, and pace and managing oneself. Vickie needs to avoid hazards, such as machinery and heights. R. 17.

The ALJ determined that Vickie had no past relevant work, but that she could perform the requirements of representative occupations such as a laundry worker, hand packager, and cleaner. R. 27. Thus, the ALJ determined that Vickie was not disabled. R. 28. Vickie appealed the ALJ's decision, and the Appeals Council denied her request for review on February 11, 2021. R. 1–6.

## ANALYSIS

Vickie alleges that the ALJ erred by (1) improperly assessing her osteoarthritis and lumbar spine degenerative disc disease as non-severe impairments, and (2) improperly evaluating the opinions of Vickie's treating physician and consultative examiner.

**A. Medical History Overview**

1. Medical Treatment

Vickie has a history of mental health illnesses, including inpatient psychiatric hospitalizations, and alleges a disability onset date in December 1985. See, e.g., 394, 539, 605,

701–02, 782. On January 26, 2018, her treating physician, Guyton Register, M.D., noted that despite Vickie's borderline personality disorder and stress, her bipolar disorder and anxiety both remained "moderate and controlled" and that she was tolerating her medications well, but was only adhering to 80% of her doses. R. 364. On February 12, 2018, Dr. Register informed Vickie that he could not serve as her doctor and recommended that she "promptly find another physician who can best care for [her] medical needs including [her] emotional and behavioral health." R. 363. Dr. Register stopped providing Vickie medical care as of March 10, 2018. Id.

On February 22, 2018, Jo-Anne Llavore, M.D. noted that Vickie's Adderall medication helped her with attention and concentration issues without any side effects. R. 1575. On exam, Vickie's mood and affect were normal, and her interactions were appropriate at her February and August 2018 visits. R. 1568, 1576.

Starting in May 2018, Vickie saw Jitendra Desai, M.D. for psychiatric medication management for her bipolar disorder and depression. R. 1613. Vickie reported during visits from May 2018 to November 2019 that she was doing well on her current medications and denied side effects. R. 1596, 1600, 1604, 1607, 1610, 1612, 1613. Dr. Desai noted that Vickie's appearance was neat, her speech, thought process, and thought content were normal, but her attention and concentration were impaired. R. 1597, 1601, 1605, 1607–08, 1610–11, 1612, 1613, 1614. Dr. Desai also noted that Vickie was alert and fully oriented, her judgment and insight were fair, her recent and remote memory were intact, and her mood was euthymic. Id. In February 2019, Vickie reported that her medication kept her mood stable and her primary care physician, Stephen Kellam, M.D., noted that she appeared well, was alert and fully oriented, and pleasant and cooperative. R. 1640–41.

Regarding Vickie's physical impairments, Vickie complained of pain due to her osteoarthritis and lumbar spine degenerative disc disease prior to the relevant period, which were treated with cortisone injections, physical therapy, and other treatment. See, e.g., R. 430, 439, 457, 814–15, 1062–63, 1120, 1419–20. At her August 2, 2018 physical examination, Vickie reported that she had no new muscle or leg pain and Dr. Kellam noted that she had normal musculoskeletal findings. R. 1567–68. Dr. Kellam determined that Vickie's medical regimen was effective and continued her medication. R. 1568. The doctor advised Vickie to continue a healthy low cholesterol diet and engage in regular aerobic exercise. Id.

On February 19, 2019, Vickie complained to Dr. Kellam that her degenerative arthritis pain worsened, and her medication was not effective. R. 1640. Dr. Kellam's diagnosis included anxiety disorder, bipolar disorder, degenerative joint disease, and osteoarthritis. R. 1640–41. He noted that Vickie's physical exam was "generally normal" and her extremities, peripheral pulses were normal. R. 1641. Dr. Kellam "[d]eclined to escalate her pain medication for mild osteoarthritis." R. 1642. On February 28, 2020, Charles Johnson, M.D. noted that Vickie's X-rays of her lumbar spine showed degenerative disc changes, but no acute lumbar spine osseous abnormality. R. 1668.

2. Medical Opinions

On February 23, 2018, Dr. Register wrote a check-box mental capacity assessment and found that Vickie had moderate limitations in her ability to follow one- or two-step oral instructions to carry out a task, to recognize a mistake and correct it, or identify and solve problems, and she had marked limitations in her ability to sequence multi-step activities, and to use reason and judgment to make work-related decisions. R. 1555. Dr. Register found that Vickie also had moderate limitations in her ability to initiate and perform a task she knew how to do, an

6

extreme limitation in her ability to work at appropriate and consistent pace or complete tasks in a timely manner, and marked limitations in her ability to concentrate, persist, or maintain pace. R. 1556. Further, Dr. Register found that Vickie had mild or moderate limitations in adapting or managing herself, except that she had a marked limitation in the ability to set realistic goals, and no or mild limitations in interacting with others. R. 1556–57. Dr. Register determined that Vickie could manage benefits in her own best interest because she had "grossly intact orientation, sensorium, cognition, and the ability to rationally weigh cost and benefit." R. 1557. The ALJ did not find the opinion persuasive because it was more restrictive than warranted by the medical evidence of the record. R. 23.

On June 19, 2018, Roger DeLapp, Ph.D. conducted a mental consultative examination of Vickie and noted that she could bathe and dress herself, shop for groceries, make simple change from a dollar, and take care of household cleaning and cooking. R. 1560. On exam, Vickie was neatly and appropriately dressed and groomed, cooperative, made good eye contact, her speech was spontaneous and logical, thought processes were appropriate, appeared "highly educated and articulate," and her mood was mildly anxious. Id. Dr. DeLapp noted that Vickie could not spell the word "world" backwards, but she was able to get through five rounds of counting serial 7s before making an error. Id. Dr. DeLapp found that Vickie's persistence and pace were average, her judgment and insight were good, and her attitude and cooperation during the exam were good. R. 1560–61. Further, Dr. DeLapp noted that Vickie was stable on her current medication, but she claimed to experience debilitating depressive episodes twice weekly. R. 1561. Dr. DeLapp determined that Vickie could not be in regular attendance at work or work on a consistent basis because of her bipolar instability, and special supervision would be unlikely. Id. He further determined that Vickie did not have a history of problems interacting with

7

supervisors, coworkers, or the public, but she could not deal with the competitive stress at the workplace. Id. The ALJ did not find the opinion persuasive because it was far more restrictive than warranted by the medical evidence of record. R. 23.

On June 27, 2018, State agency psychologist Jo McClain, Psy. D., reviewed Vickie's record and found that she did not have any understanding and memory limitations, was not significantly limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination or proximity to others, or make simple work-related decisions, but Vickie had moderate impairments in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday without psychologically-based interruptions, and perform at a consistent pace without an unreasonable number of rest periods. R. 90–91. Dr. McClain also found that Vickie would be able to persist and concentrate to perform at least simple tasks for two-hour blocks to complete a normal workday/workweek and that she had no social limitations. R. 91. Further, Dr. McClain found that Vickie had moderate limitations in her ability to respond to workplace changes, but she was not significantly limited in her ability to be aware of normal hazards, travel in unfamiliar places, use public transportation, and set realistic goals, and Vickie was capable of acting independently and would be able to adjust to occasional workplace changes. Id. Dr. McClain concluded that Vickie could perform at least simple and routine work activities. Id. Dr. McClain noted that Dr. DeLapp's opinion was not supported by evidence and was not consistent with Vickie's report or the objective evidence. R. 90. The ALJ found Dr. McClain's opinion persuasive because it was generally consistent with and supported by the mental evidence of record. R. 21.

On November 16, 2018, State agency psychologist Richard J. Milan, Ph.D.,

8

agreed with the findings of Dr. McClain except that he found Vickie had moderate limitations in her ability to interact with the general public due to her anxiety, but she could complete simple tasks not requiring frequent public contact. R. 106. Dr. Milan concluded that Vickie would have trouble coping with frequent stressors but could perform simple, routine work. Id. The ALJ found the opinion persuasive because it was generally consistent with and supported by the mental evidence of record. R. 22.

On November 16, 2018, State agency medical consultant Robert McGuffin, M.D. found that Vickie did not any severe impairments. Id. The ALJ found Dr. McGuffin's opinion persuasive because it was consistent with and supported by the medical evidence of record. Id. The ALJ ordered a post-hearing physical consultative examination because Vickie testified about arthritis in her knees, but all of her treatment or complaints about her knees were prior to 2018. R. 10, 22.

On February 23, 2020, Shan Fairbanks, D.O. conducted a physical consultative examination of Vickie and found that she did not have any severe physical impairments. R. 1672. Vickie reported that she was working as a personal care assistant which included her engaging in activities of daily living such as preparing meals, doing housework, watching television, resting, sleeping, and reading. R. 1673. Dr. Fairbanks noted that Vickie was alert, with good eye contact, fluent speech, appropriate mood, clear thought processes, normal memory, good concentration, fully oriented, a steady gait, was able to walk around, full muscle strength and normal muscle bulk and tone, normal sensation, and her straight leg raise test was bilaterally negative. R. 1674, 1676. The doctor also noted that Vickie was able to squat and rise with ease, had no difficulty getting on and off the exam table, was able to heel and toe walk, hop on either foot, and dress/undress adequately, and had a full range of motion throughout. R. 1675. Dr. Fairbanks

found that Vickie could sit, stand, and walk normally in an eight-hour workday with normal breaks, does not need an assistive device, could carry twenty pounds frequently and thirty pounds occasionally, and had no postural, manipulative, communicative, or workplace environmental limitations. R. 1676. The ALJ found that the opinion was not persuasive because it was more restrictive than warranted by the medical evidence of record, which showed that Vickie had non-severe physical impairments and could perform the full range of work at all exertional levels. R. 24.

On April 6, 2020, Dr. Fairbanks wrote a letter that Vickie could frequently lift/carry up to twenty pounds, occasionally lift/carry up to fifty pounds, and sit, stand, and walk for four hours at a time and eight hours total in an eight-hour workday. R. 1678–79. Dr. Fairbanks also found that Vickie could frequently climb stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl. R. 1680. He further found that Vickie could perform activities such as shopping, travel without companion for assistance, use standard public transportation, prepare a simple meal, care for personal hygiene, and sort, handle or use paper/files. R. 1681. The ALJ found that the opinion was not persuasive because it was more restrictive than warranted by the medical evidence of record. R. 24.

### B. Non-Severe Impairments

Vickie argues that the ALJ erred by finding that her osteoarthritis and lumbar spine degenerative disc disease were non-severe impairments at step two and then further erred at steps four and five with regard to these conditions. Pl.'s Br. at 12–16, Dkt 22. However, the ALJ did not ignore the evidence cited by Vickie, and her argument amounts to a disagreement with the ALJ's RFC determination, essentially asking the court to reweigh the evidence.

An impairment is non-severe when it causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). "[A]n impairment can be considered as 'not severe' only if it is a slight

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Vickie bears the burden of proving that her osteoarthritis and lumber spine degenerative disc disease were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Further, under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "Thus, the issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity." Miller v. Astrue, No. 8:10-1142-HMH-JDA, 2011 WL 1576203, at *15 (D.S.C. Apr. 7, 2011). Consequently, any error by the ALJ at step two is harmless if the ALJ considers the effects of all of Vickie's impairments in the subsequent steps. See Brooks v. Astrue, No. 5:10CV00104, 2012 WL 1022309, at *12 (W.D. Va. Mar. 26, 2012) (citing Miller, 2011 WL 1576203, at *15); see also Gaskins v. Comm'r, No. WDQ–13–1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014); Hammond v. Astrue, No. TMD 11–2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases).

Here, substantial evidence supports the ALJ's conclusion at step two that Vickie's osteoarthritis and lumbar spine degenerative disc disease were non-severe impairments. Nevertheless, the ALJ considered both conditions when developing Vickie's RFC at step four. At step two, the ALJ reviewed Vickie's medical records and treatment from 2003 to 2017

regarding her osteoarthritis, which predate the relevant period. R. 13. The ALJ noted that Dr. Kellam prescribed Celebrex for Vickie's arthritis in 2018 and 2019, but declined to give her stronger pain medication for her mild osteoarthritis. R. 13–14. The ALJ also noted that Vickie's physical examinations did not show any problems with movement of the extremities or walking because of either her osteoarthritis or lumbar spine degenerative disc disease. R. 13. The ALJ further noted that no doctor has recommended that Vickie undergo surgery or that she receive physical therapy, injections, or any treatment beyond medication for her osteoarthritis. Id. The ALJ further noted that during the physical consultative examination with Dr. Fairbanks in 2020, Vickie denied any limitations with sitting, standing, walking, or lifting. R. 13, 1672. Thus, the ALJ concluded that Vickie's osteoarthritis and lumbar spine degenerative disc disease symptoms were non-severe and clarified that "the limiting effects of all of the claimant's medically determinable impairments, including those that are non-severe, have been considered in determining the claimant's residual functional capacity." R. 14. Substantial evidence supports the ALJ's conclusion that Vickie's complaints of osteoarthritis and degenerative disc disease were non-severe impairments.

At step four, the ALJ reviewed Vickie's hearing testimony, subjective allegations, treatment records, and the medical opinion evidence. R. 19–24. The ALJ found that Dr. McGuffin's opinion that Vickie had no severe physical impairments persuasive, as it was supported by and consistent with the medical evidence of record. R. 22. Specifically, the ALJ noted that Vickie "had little treatment for physical issues from 2018 through 2020. Her only complaint at the hearing was arthritis in her knees, but all of the treatment or complaints about her knees was prior to 2018 in the medical records." Id. The ALJ explained that he found Dr. Fairbanks's opinion not persuasive, as the doctor found that Vickie had no severe physical

12

impairments and his opinion was more restrictive than warranted by the medical evidence of record. R. 19, 23–24.

The ALJ explained the basis for his conclusion that Vickie's osteoarthritis and lumbar spine degenerative disc disease complaints were non-severe impairments, and those conclusions are supported by substantial evidence. Further, even if the ALJ erred by finding the disputed impairments non-severe at step two, the error would be harmless because the ALJ considered the effects of all of Vickie's impairments in the step four RFC analysis.

The role of this court is not to reweigh the evidence, as Vickie urges, or substitute its judgment for the ALJ, but instead to determine whether the ALJ's decision is supported by substantial evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, I recommend finding that substantial evidence supports the ALJ's conclusion at step-two that her osteoarthritis and lumbar spine degenerative disc disease conditions were non-severe impairments.

### C. Medical Opinion Evidence

Vickie asserts that the ALJ erred in not adopting the opinions of Drs. Register and DeLapp, and instead finding that Vickie is not disabled. Pl.'s Br. at 17–21, Dkt. 22. Specifically, Vickie argues that the ALJ should not have rejected Dr. Register's opinion, which was supported by Dr. DeLapp's opinion. Id. at 19–21. Essentially, Vickie is asking the court to re-weigh the medical evidence.

Vickie submitted her disability application in February 2018, thus, 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions in this case.[4] When making

---

[4] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

13

an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide, however, that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[5]

Here, the ALJ appropriately considered Dr. Register's opinion under the new regulations and determined that the opinion was not supported by or consistent with the medical evidence of record. R. 22–23.[6] The ALJ summarized Dr. Register's findings, including that Vickie had

---

[5] An exception to this is when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

[6] Vickie's argument that the ALJ failed to discuss Dr. DeLapp's findings which supported Dr. Register's opinion is meritless. Pl.'s Br. at 19. As discussed in this Report and Recommendation, the ALJ analyzed Dr. DeLapp's opinions, finding them unpersuasive and rejecting them, including the more restrictive limitations, in the RFC determination.

14

marked and extreme limitations in the fields of understanding, remembering or applying information and maintaining concentration, persistence, or pace. R. 22, 1555–57. The ALJ determined that Dr. Register's proposed limitations were more restrictive than warranted by the mental evidence of record. R. 23. For example, the ALJ noted that Drs. Register and Desai prescribed Vickie psychiatric medication from 2018 through 2020, and that Vickie reported that her mental symptoms were stable with medication. R. 23, 364, 1596, 1600, 1604, 1607, 1610. The ALJ also noted that Vickie's last hospitalization for mental symptoms was four years prior to the relevant period. R. 23, 539. The ALJ further noted that Vickie's mental status examinations during the relevant period were usually normal except for depressed and anxious mood and affect, and deficits in concentration. R. 23, 364–65, 1576, 1596–97, 1600–01, 1604–05, 1607–08, 1610–11.

Moreover, the ALJ included Vickie's reported daily activities such as attending church, babysitting her grandchildren, watching television, reading, doing household chores, and caring for an elderly individual about twenty-five hours per week as factors in his assessment. R. 23, 290–91, 1560. The ALJ further noted that Dr. Register had not treated Vickie since prior to the relevant period. Also, the ALJ found persuasive the opinions of the State agency medical consultants, Drs. McClain and Milan, who found that Vickie had no more than moderate mental limitations. R. 21–22, 90–91, 105–06. Thus, the ALJ sufficiently analyzed the supportability of Dr. Register's opinion and provided substantial evidence for why he rejected the doctor's finding.

Substantial evidence also supports the ALJ's decision not to adopt Dr. DeLapp's medical opinion. The ALJ sufficiently explained his consideration of Dr. DeLapp's opinion overall, as required by the regulations. The ALJ found Dr. DeLapp's opinion regarding Vickie's mental

impairments not persuasive as they were more restrictive than warranted by the medical evidence of record. R. 23. In assessing the weight to give to Dr. DeLapp's opinion, the ALJ considered Vickie's report that her mental symptoms were generally stable on her medications, she did not attend counseling sessions, and that her last psychiatric hospitalization was in 2014. Id. The ALJ also considered that Vickie generally had normal mental status examinations except for concentration problems and a depressed or anxious mood and affect, and that she reported activities of attending church, babysitting grandchildren, watching television, reading, doing household chores, and caring for an elderly individual. Id. The ALJ also relied upon the less restrictive findings of Drs. McClain and Milan, which he found persuasive because they were generally consistent with and supported the medical evidence on the record. R. 21–22. The ALJ determined that Dr. DeLapp's examination findings were inconsistent with his conclusions. R. 23. For example, the ALJ found that Vickie did not have a history of problems interacting with supervisors, coworkers, or the public, that she was cooperative, made good eye contact, and that her speech and thought processes were unremarkable. The ALJ also concluded that Vickie appeared only mildly anxious during the examination, and that her judgment, insight, attitude, and cooperation were good. She had an average persistence and pace, and she was stable on her current medication. R. 1560–61. These findings were inconsistent with Dr. DeLapp's opinion that Vickie could not deal with competitive stress at the workplace and that she could not complete a normal workday. Hence, the ALJ explained why he rejected Dr. DeLapp's opinion as inconsistent and not supported by both the evidence of record and his own examination findings.

      As required, the ALJ acknowledged Drs. Register and DeLapp's opinions, applied the appropriate regulations, and considered the persuasiveness of the opinions. The ALJ was not required to defer to the doctors' opinions, or explain how he considered each of their medical

opinions individually.[7] Instead, the RFC assessment lies squarely with the ALJ, not with any medical provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC.").

The ALJ adequately explained how he evaluated and weighed the medical opinions, and appropriately incorporated the opinions into the RFC determination to the extent they were supportive and consistent with the overall record. When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020).

## CONCLUSION

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of

---

[7] As the Regulations explain, because of the:

> voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c.

fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: August 24, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge